* * * * * * * * * * *
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence or to rehear the parties or their representatives, the Full Commission affirms with some modifications the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and the Industrial Commission has jurisdiction of the parties and of the subject matter of this case. All the parties are bound by and subject to the North Carolina Workers' Compensation Act. All parties have been correctly designated and there is no question as to the misjoinder or nonjoinder of any party.
2. An employer-employee relationship existed between Plaintiff and Defendant-Employer at all relevant times herein.
3. Defendant-Employer was insured by Isurity Insurance Services with workers' compensation coverage at all relevant times herein.
4. Plaintiff's medical records were stipulated into evidence at the hearing, and the deposition of Dr. Mark J. Warburton taken on February 1, 2006, was timely received into evidence.
5. Plaintiff's average weekly wage was $316.40 per week, yielding a compensation rate of $210.95 per week at all relevant times herein.
6. The issues to be decided from this hearing are the following:
 a. Whether Plaintiff sustained an injury by accident while in the course and scope of her employment with Defendant-Employer on April 7, 2004 and/or April 27, 2004?
 b. If so, what, if any, benefits is Plaintiff entitled to recovery under the North Carolina Workers' Compensation Act?
 c. Have Defendants unreasonably defended the claim?
 * * * * * * * * * * * EXHIBITS
The following documents were admitted into evidence as exhibits:
 a) Stipulation #1, Plaintiff's medical records;
 b) Stipulation #2, Plaintiff's medical records;
 c) Stipulation #3, Videotapes of May 21 and 22, 2004, and May 29, 2004.
 * * * * * * * * * * *
Based on the foregoing Stipulations and the evidence presented, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of hearing before the Deputy Commissioner, Plaintiff was 56 years old, having been born on December 12, 1949. Following a career working as a nurses aide out of high school, a receptionist in the emergency room, and the operator of a licensed, home daycare, Plaintiff applied to work with Defendant-Employer in February 1999. When she interviewed for a job as a teaching assistant, she presented a history of fibromyalgia and was walking with a cane. The director told Plaintiff that she had a very good outlook on working with children and would probably do "as good a job or better than some folks who didn't have to use a cane." Plaintiff was very motivated to work and did not let her history of arthritis and fibromyalgia, which was diagnosed in the late 1980's and caused muscle pain throughout her body, bother her because she enjoyed her work.
2. Plaintiff was hired to be an assistant teacher in the preschool department and established an excellent attendance record. She worked continuously from February 1999 until April 2004, except for a brief period in 2000, when she elected to have knee replacement surgery, which was unrelated to her work. Following the surgery she was out of work for about 6 weeks and may have used a cane for a short time thereafter when she returned to work, but ended up not having to use a cane at all. Prior to April 2004, Plaintiff was having "real good pain management with medication and stretching and exercising" and was thrilled because she did not have to use a cane.
3. On April 7, 2004, Plaintiff slipped in water in a single-use bathroom. As she was getting up from the toilet, her right foot slipped and she fell straight down on her bottom jarring her whole body. The fall was so hard that it hurt her jaw and caused a tooth to chip. Plaintiff mentioned to a co-worker that she had fallen and was in a lot of pain, but she continued to work thinking that it was just muscle pain. She treated at home with hot compresses and Advil. Two days after the fall, Plaintiff reported the incident to the Assistant Coordinator, Cindy Modlin. She continued thereafter for several weeks to work her normal hours in spite of her pain due to her loyalty to Defendant-Employer, her love of working with the children, and not wanting to inconvenience other teachers.
4. On April 27, 2004, Plaintiff was walking through the classroom, pushing a trashcan when she slid on a piece of a wooden puzzle board. She was able to catch herself with the trashcan, avoiding a fall. She jarred her back, causing a further increase in her level of pain. The lead teacher, Peggy Farlow, was in the classroom and saw the incident. Plaintiff testified that Ms. Farlow said something like, "I bet that hurt", or "Oh, I could tell that hurt." Ms. Farlow urged Plaintiff to report the incident to the Director, April Glover, which she did. Ms. Glover arranged for Plaintiff to seek emergency treatment at Med Central.
5. On April 27, 2004, Plaintiff was seen at Med Central where she reported that she had fallen two weeks prior injuring her low back and that on the morning of April 27, 2004, she had tripped causing her pain to worsen. The medical provider noted that Plaintiff had chronic back pain with an acute exacerbation. Plaintiff was advised to continue taking Celebrex and to schedule physical therapy. She was seen again at Med Central on April 28, 2004, and released for light work, to include "sit down work only." Defendant-Employer did not have any "sit down work only" to offer. Plaintiff was next seen at Med Central on May 4, 2004, when she reported pain and numbness in her right hip and down her right leg, along with headaches, nausea, and depression. The medical provider ordered a CT scan of the right hip and again prescribed sit down work.
6. Plaintiff saw Dr. John Begovich, her pain management physician who is the Medical Director at The Rehab Center of High Point Regional Health Systems, on April 30, 2004. She reported a work-related accident, which led to right hip pain and a pain level elevated to 10 out of 10 in severity. Dr. Begovich noted that Plaintiff had been medically stable overall, except for her work-related accident.
7. On May 7, 2004, Plaintiff was seen by Dr. W. Can Caffrey with Sports Medicine and Orthopedics in High Point, North Carolina. Plaintiff reported that she was injured due to a fall while at work. Dr. Caffrey noted that Plaintiff had a history of fibromyalgia and known arthritis of her hips. Dr. Caffrey noted that he told Plaintiff "pure and simple that if she broke her hip, this would be considered an exacerbation of a pre-existing condition. If it is not broken, I don't think it would be indicated for any possible hip surgery . . . [or] replacement to be covered by the carrier." Plaintiff next saw Dr. Caffrey on May 28, 2004 and he recommended an open MRI of the spine and noted that Plaintiff was not able to work.
8. On May 25, 2004, Plaintiff saw her primary care physician, Dr. Rafaela Aguiar, with multiple complaints. She reported that she had fallen at work and had severe pain in her right hip and low back. She also reported that she was seeing a psychologist for depression with worsening symptoms, and while she missed the children at the school, the thought of going back to work was terrifying because she could not function with the amount of pain she was experiencing.
9. On August 2, 2004, Plaintiff saw Dr. Mark J. Warburton, the orthopaedic surgeon who had previously performed her knee replacement surgery. Dr. Warburton is certified by the American Board of Orthopedic Surgery and has practiced with High Point Orthopaedic and Sports Medicine since 1981. Plaintiff related a history of constant pain since a fall on April 7, 2004, which occurred as a result of an accident at work. She also indicated two dates of injury, April 7, 2004 and April 27, 2004. Plaintiff further related that she had good pain management prior to April 7, 2004, and since her fall on that date she had an elevation and completely different type of pain to deal with on a daily basis, including numbness and weakness requiring the use of a cane. Dr. Warburton ordered "no work" and recommended surgery "since she is having significant discomfort." Dr. Warburton performed a right total hip arthroplasty on the Plaintiff on October 19, 2004.
10. On May 3, 2004, Plaintiff gave a statement to Cara Costner with Defendant-Carrier in which she described both the fall of April 7, 2004 and the incident when she slipped and caught herself on April 27, 2004, consistent with her testimony at the hearing in this matter. Plaintiff received a notification from Defendant-Carrier that her workers' compensation claims were denied. Defendant-Employer's office manager thereafter completed a disability benefit application stating that Plaintiff's injuries were not work related and asked Plaintiff to sign the application. Plaintiff refused to sign because she believed it would be dishonest to sign an application, which contained information that was not true.
11. Prior to the incidents of April 2004, Plaintiff managed her fibromyalgia, arthritis and depression well enough to work regularly, it was not her intent to have hip replacement surgery until reaching age 65 or 70 and her treating physicians had not informed her that she needed surgery on her hips.
12. Following her two injuries by accident on April 7, 2004, and April 27, 2004, Plaintiff's right hip injury prevented her from working. Dr. Warburton testified that x-rays of Plaintiff's hips revealed "end-stage degenerative arthritis", but that does not necessarily require hip replacement surgery if the patient is not having severe symptoms. He further opined that even though the arthritis in Plaintiff's left hip was radiographically worse than the right, she was suffering more pain in the right hip, which may have resulted from her fall. Dr. Warburton opined and the Full Commission finds as fact that the fall of April 7, 2004, aggravated Plaintiff's pre-existing arthritis necessitating her need for hip replacement surgery. Dr. Warburton further opined and the Full Commission finds as fact that Plaintiff is disabled from work due to the combination of her pre-existing total knee replacement, her total hip replacement, and her unrelated rotator cuff repair and that prior to the two injuries by accident in April 2004, Plaintiff was not a candidate for disability. Dr. Warburton testified:
 A 15-year history of fibromyalgia is significant. And the most significant thing about that is . . . I don't believe I have ever seen a patient who has had a diagnosis of fibromyalgia that long who is working. So this is an individual who obviously has the . . . fortitude or the necessity or whatever to continue to function in the workplace.
13. After Plaintiff was denied workers' compensation benefits, friends and family members offered to hold yard sales to raise money to help with her living expenses. Friends and family members did the heavy work, and Plaintiff, with the assistance of pain medication and often a cane, helped with the work, but she did not lift anything heavy.
14. Defendants offered surveillance videotapes, which were stipulated into evidence by the parties showing Plaintiff walking from her car to a drug store with the use of a cane, and at yard sales ambulating on some occasions with a cane and on other occasions walking short distances without the use of any assistive device. The activities in which Plaintiff engaged as depicted on the surveillance videotapes appear to be consistent with her physical capabilities as opined by her treating physicians.
15. On April 7, 2004, Plaintiff sustained an injury by accident arising out of and in the course of her employment with Defendant-Employer when she slipped on water on the bathroom floor and fell. Plaintiff's condition following her April 7, 2004 injury was further aggravated by a second injury by accident or specific traumatic incident arising out of and in the course of her employment on April 27, 2004, when she slipped on a puzzle piece and grabbed onto a trashcan to keep from falling causing her back to be jarred and an increase in her level of pain. Both accidents aggravated her pre-existing arthritis and accelerated her need for hip replacement surgery.
16. Plaintiff has not worked since April 27, 2004, and remains totally disabled due to the combined effect of the work-related total hip replacement, her unrelated knee replacement of 2002, and her unrelated rotator cuff repair in 2005.
17. Plaintiff's testimony that she sustained injuries by accident on April 7, 2004, and April 27, 2004, how her injuries occurred, and her resulting symptoms and disability is found to be credible. The Full Commission gives greater weight to the testimony of Dr. Warburton over any contrary medical opinion or medical evidence.
18. As a result of her two work-related injuries by accident, in combination with her pre-existing conditions, Plaintiff has been incapable of working in any employment since April 28, 2004. Although medical providers at Med Central released Plaintiff to light duty, sit down only work on April 28, 2004, which Defendant-Employer did not have available, Dr. Caffrey directed her not to work on May28, 2004 and Dr. Warburton directed her not to work when he began treating her on August 2, 2004.
19. There is no specific evidence in the record that Plaintiff has reached maximum medical improvement or that she has received a permanent partial impairment rating.
20. The medical treatment Plaintiff received for her two compensable injuries, including the treatment provided by Dr. Warburton, was causally related to her workplace injuries and was reasonably required to effect a cure, provide relief and lessen her disability.
21. Dr. Warburton should be authorized as Plaintiff's treating physician.
22. Plaintiff's average weekly wage was $316.40 per week, yielding a compensation rate of $210.95 per week at all relevant times herein.
23. Defendants had no reasonable grounds to deny that plaintiff sustained either the work-related injury on April 7, 2004 or the work-related injury on April 27, 2004. The incident on April 27, 2004 was witnessed and Plaintiff was unable to perform the duties of her employment after her second injury. However, due to Plaintiff's pre-existing conditions, it was not unreasonable to dispute whether her need for total hip replacement was related to her injuries. The Full Commission in its discretion is not awarding N.C. Gen. Stat. § 97-88.1
attorney fees.
24. The Deputy Commissioner awarded compensation to Plaintiff and Defendants appealed to the Full Commission. By its decision herein, the Full Commission is also awarding compensation to Plaintiff. The Full Commission in its discretion finds that attorney fees under N.C. Gen. Stat. § 97-88 should be awarded.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission concludes the following:
 CONCLUSIONS OF LAW
1. On April 7, 2004, Plaintiff sustained an injury by accident or specific traumatic incident arising out of and in the course of her employment with Defendant-Employer when she slipped in water and fell in a single use bathroom at work while she was getting up from the toilet. N.C. Gen. Stat. § 97-2(6).
2. On April 27, 2004, Plaintiff sustained an injury by accident or specific traumatic incident arising out of and in the course of her employment with Defendant-Employer when she slipped on a piece of a wooden puzzle board and caught herself with the trashcan, avoiding a fall but jarring her back. N.C. Gen. Stat. § 97-2(6).
3. Plaintiff's fall of April 7, 2004, aggravated her pre-existing arthritis. Plaintiff's condition after her April 7, 2004 injury was further aggravated by her second work injury on April 27, 2004. Both accidents aggravated her pre-existing arthritis and accelerated her need for hip replacement surgery. N.C. Gen. Stat. § 97-2(6).
4. "[A]ggravation of a pre-existing condition which results in loss of wage earning capacity is compensable under the workers' compensation laws in our state. 'The work-related injury need not be the sole cause of the problems to render an injury compensable. If the work-related accident contributed in some reasonable degree to [P]laintiff's disability, she is entitled to compensation.'" Smith v. ChampionInt'l, 134 N.C. App. 180, 182, 517 S.E.2d 164, 166 (1999) (citing Hoylev. Carolina Associated Mills, 122 N.C. App. 462, 465-66, 470 S.E.2d 357,359 (1996)). In the instant case, Dr. Warburton opined and the Full Commission has found as fact that the fall of April 7, 2004, aggravated Plaintiff's pre-existing arthritis necessitating or accelerating the need for total hip replacement. In addition, the Full Commission has found as fact that Plaintiff's condition following her injury by accident on April 7, 2004, was further aggravated when she sustained an accident arising out of and in the course of her employment on April 27, 2004 as described herein. Plaintiff remains totally disabled due to a combination of her work-related total hip replacement, and her unrelated knee replacement of 2002, and her unrelated rotator cuff repair of 2005. Therefore, Plaintiff's injuries by accident on April 7, 2004, and April 27, 2004 contributed to a reasonable degree to Plaintiff's disability and Plaintiff is entitled to compensation for her disability.
5. In order to receive disability compensation, the employee has the burden of proving the existence of that disability and its extent.Perkins v. U.S. Airways, ___ N.C. App. ___, 628 S.E.2d 402 (2006). The burden may be met in one of four ways: (1) the production of medical evidence that she is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that she is capable of some work, but that she has, after a reasonable effort on her part, been unsuccessful in her effort to obtain employment; (3) the production of evidence that she is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that she has obtained other employment at a wage less than that earned prior to the injury.Russell v. Lowes Product Distribution, 108 N.C. App. 762, 765,425 S.E.2d 454, 457 (1993). In the instant case, Dr. Warburton opined that prior to the incidents of April 2004, Plaintiff was not a candidate for disability. Dr. Warburton opined and the Full Commission has found as fact Plaintiff has not worked since April 27, 2004, and remains totally disabled due to the combination of her total hip replacement, the knee replacement of 2002, and the 2005 rotator cuff repair. After her April 27, 2004 injury, medical providers at Med Central released Plaintiff to sit down work only which Defendant could not provide. Plaintiff was subsequently taken out of work by Dr. Cafferty and Dr. Warburton. Since her total hip replacement surgery, Plaintiff has been medically unable to work in any employment. Moreover, there is no specific evidence in the record that Plaintiff has reached maximum medical improvement or that she has received a permanent partial impairment rating. Accordingly, the Full Commission concludes that Plaintiff has proven that she has been totally disabled from employment since April 28, 2004, due to her compensable work-related injuries by accident on April 7, 2004, and on April 27, 2004.
6. Plaintiff's average weekly wage was $316.40 per week, yielding a compensation rate of $210.95 per week at all relevant times herein. N.C. Gen. Stat. § 97-2(5).
7. Plaintiff is entitled to temporary total disability compensation at the rate of $210.95 per week from April 28, 2004, and continuing until further order of the Commission. N.C. Gen. Stat. § 97-29.
8. As a result of her compensable injuries, Plaintiff is entitled to payment for all reasonable medical expenses incurred or to be incurred, including treatment provided by Dr. Warburton, for so long as such treatment is reasonably required to effect a cure, provide relief, or tends to lessen Plaintiff's disability. N.C. Gen. Stat. § 97-25.
9. Dr. Warburton's should be approved as Plaintiff's authorized treating physician.
10. Plaintiff is entitled to attorney fees under N.C. Gen. Stat. § 97-88.
11. In the discretion of the Full Commission, Plaintiff's claim for attorney fees under N.C. Gen. Stat. § 97-88.1 should be denied.
 * * * * * * * * * * *
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to an attorney's fee hereinafter approved, Defendants shall pay compensation to the Plaintiff at the rate of $210.95 per week beginning April 28, 2004 and continuing until further order of the Commission. To the extent that this compensation has accrued, it shall be paid in a lump sum.
2. Defendants shall pay for all medical expenses incurred or to be incurred by the Plaintiff as a result of her compensable injuries when bills for the same have been submitted and approved according to procedures adopted by the Commission, for so long as such evaluations, treatments and examinations may reasonably be required to effect a cure, give relief and/or lessen Plaintiff's disability.
3. An attorneys' fee in the amount of 25% of the compensation awarded to Plaintiff in Paragraph 1 above is approved for Plaintiff's counsel. Defendants shall deduct 25% of Plaintiff's accrued compensation and pay such amount directly to Plaintiff's attorney. Thereafter, Defendants shall deduct and pay to Plaintiff's attorney every fourth check from Plaintiff's future compensation.
4. Defendants shall pay the costs of this matter.
5. Additionally, Defendants shall pay attorney fees to Plaintiff's counsel under N.C. Gen. Stat. § 97-88. Plaintiff shall submit an itemized statement of time spent defending Defendants' appeal to the Full Commission.
6. Plaintiff's request for attorney fees under N.C. Gen. Stat. § 97-88
or § 97-88.1 is denied.
 ORDER
Defendants have moved for an order compelling Plaintiff to attend an Independent Medical Examination. Plaintiff is claiming compensation and is obligated to attend the Independent Medical Examination, provided it is scheduled at a reasonable time and place and proper notice is given. The Full Commission hereby orders the parties to confer and attempt to agree upon a doctor to provide such examination or at the very least, the city where the examination will occur. In scheduling the examination, Defendants shall give great consideration to the distance Plaintiff would have to travel. The Full Commission is retaining jurisdiction over Defendants' motion for an Independent Medical Examination and either party may seek a ruling on any related matters in dispute.
This the ___ day of February 2007.
 S/ ___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/ ___________________ BUCK LATTIMORE CHAIRMAN
 S/ ___________________ THOMAS J. BOLCH COMMISSIONER